UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE DIXON and ESTATE OF
EMANUEL BURGARINO,

         Plaintiffs,

         v.

CAESARS ENTERTAINMENT CORP., et al.,

         Defendants.

No. 21 CV 1673

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Emanuel Burgarino and his fiancé Denise Dixon's weekend at Harrah's Hotel and Casino ended in tragedy. On the last night of their stay, Burgarino left the casino to get something from the couple's hotel room. Before he reached the room, an attacker stabbed Burgarino to death in the hallway. Alleging that the hotel failed to maintain adequate security to prevent the assault, Burgarino's estate sues Harrah's[1] for premises-liability negligence. Dixon also brings her own claim against Harrah's for intentional infliction of emotional distress based on her interactions with hotel staff after the attack. Harrah's moves to dismiss the complaint for failure to state a

---

[1] Plaintiff named several companies associated with Harrah's Joliet, Illinois location as defendants, including: Caesars Entertainment Corporation n/k/a Caesars Holdings, Inc.; Des Plaines Development LP; Harrah's Joliet Landco, LLC; Caesars Entertainment, Inc.; Caesars Entertainment Operating Company, Inc. n/k/a CEOC, LLC; VICI Properties Inc.; VICI Properties 1 LLC; and Harrah's Illinois LLC f/k/a Harrah's Illinois Corporation. Because all defendants join the motion to dismiss, *see* [38], [40], I refer to defendants collectively as "Harrah's" throughout this opinion. Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is granted in part and denied in part.

## I. Legal Standards

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To avert dismissal, the complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in plaintiffs' favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. Labels or "a formulaic recitation of a cause of action's elements" won't suffice. *Twombly*, 550 U.S. at 555.

## II. Facts

### A. The Fatal Assault of Burgarino

In March 2019, Emanuel Burgarino and his fiancé Denise Dixon spent a weekend at Harrah's Hotel and Casino in Joliet, Illinois. [19] ¶¶ 1–2, 19. The couple spent Sunday evening gambling when, shortly before 10 p.m., Burgarino decided to get something from the couple's hotel room. *Id*. ¶ 21. Once back at the hotel (on the opposite end of Harrah's from the casino), Burgarino took the elevator to the fifth floor. *Id*. ¶¶ 20–21. According to police reports, Robert Watson robbed and fatally stabbed Burgarino in the fifth-floor hallway. *Id*. ¶ 22. Watson fled down a stairwell and exited the hotel; authorities caught him the following day at a public library. *Id*.

¶¶ 22, 24. Paramedics rushed Burgarino to the hospital but were unable to save his life. *Id.* ¶¶ 22, 25.

### B. Before the Assault

In the hours before the assault, Watson had been stalking other patrons at Harrah's in plain view of hotel staff. *Id.* ¶ 23. He was not a guest of the hotel and had a lengthy criminal history, with charges in four states for crimes including burglary, robbery, and aggravated robbery. *Id.* ¶¶ 23–24. According to police reports, on the day before and day of the assault, Harrah's surveillance cameras repeatedly recorded Watson behaving suspiciously. *Id.* ¶¶ 23, 45. The cameras recorded Watson moving throughout Harrah's without checking in, gambling, or buying anything to eat or drink. *Id.* ¶ 45.

The day before the assault, security cameras recorded Watson in the same stairwell from which he would escape after attacking Burgarino. *Id.* ¶ 23. Harrah's recorded Watson coming on the property on Saturday night, about 23 hours before he attacked Burgarino, and he remained either inside Harrah's property or in its parking garage through the day of the assault. *Id.* ¶ 45. Just after midnight, security cameras captured Watson following a different elderly man into the hotel elevator and getting out on the seventh floor. *Id.* ¶ 46. On Sunday morning, cameras showed Watson in a hotel stairwell reaching into a box, removing vinyl gloves, and stuffing them in his pocket (he would later wear these gloves during the attack on Burgarino), before taking the elevator to exit the hotel. *Id.* Watson returned in the afternoon, and Harrah's cameras recorded him walking in and out of the parking garage, riding the

garage elevator, and sitting at a dining table inside Harrah's. *Id*. ¶ 47. Minutes before he assaulted Burgarino, Watson returned to the hotel from the parking garage and sat on a bench overlooking the lobby elevator area. *Id*. ¶ 48. Watson then walked by security cameras and the hotel reception desk before following another guest into the hotel elevator, which he rode to the fifth floor where he committed the fatal assault. *Id*. ¶¶ 23, 48. At no point did Harrah's investigate why Watson was on the premises. *Id*. ¶ 23.

In the three years before the assault on Burgarino, the Joliet Police Department frequently received calls regarding criminal activity at Harrah's. *Id*. ¶ 41. And one year before Burgarino's killing, another hotel guest was held at knife point in an attempted robbery at the same entry point that Watson had used before attacking Burgarino. *Id*. The complaint alleges that Harrah's failed to provide reasonable security or to employ reasonable measures to deter non-guests like Watson from accessing the hotel and assaulting guests. *Id*. ¶¶ 41–42, 49.

### C. After the Assault

Harrah's made no effort to locate or contact Dixon to inform her about what had happened to Burgarino. *Id*. ¶¶ 27, 56. Wondering why Burgarino had not returned to the casino, Dixon went to the hotel elevator and tried to get to the fifth floor. *Id*. ¶ 28. Harrah's employees stopped Dixon and told her that she could not proceed without first investigating who she was. *Id*. The employees did not alert Dixon that Burgarino had been assaulted or that Watson remained at large. *Id*. ¶¶ 28–29, 56. A police officer drove Dixon to the hospital, but Dixon was unable to

4

see Burgarino while he was still alive. *Id.* ¶ 31. Dixon alleges that Harrah's deprived her of an opportunity to see Burgarino before he died. *Id.* ¶ 56.

When Dixon returned to the hotel to gather her belongings, no employee offered her sympathy for what had happened to Burgarino, and the clerk asked her to pay her hotel bill. *Id.* ¶ 33. Before leaving, Dixon asked a Harrah's employee to escort her and her family members to their cars in the parking garage, but the employee walked them only to the entrance. *Id.* ¶ 32. Harrah's continued to send Dixon and Burgarino personalized ads asking them to come back for another stay. *Id.* ¶ 33. These actions caused Dixon severe emotional distress. *Id.* ¶¶ 58–59.

Dixon, as representative of Burgarino's estate, sued Harrah's for premises-liability negligence (Count I). *Id.* ¶¶ 2, 37–54. She also brought an individual claim against Harrah's for intentional infliction of emotional distress (Count II). *Id.* ¶¶ 55–60. Harrah's moves to dismiss both counts for failure to state a claim.

## III.    Analysis

### A.    Premises-Liability Negligence

There's no dispute over which state's law applies, so I apply Illinois law. *See Kolchinsky v. Western Dairy Transport, LLC*, 949 F.3d 1010, 1013 n.2 (7th Cir. 2020) ("When there is no dispute over which state's law applies, the court will apply the substantive law of the state in which the federal court sits.").[2]

---

[2] The court has diversity jurisdiction under 28 U.S.C. § 1332. Dixon, who brings claims both individually and as the representative of Burgarino's estate, is a citizen of Wisconsin, and the complaint seeks damages exceeding $6,000,000. [19] ¶¶ 1–2, 54, 60. Defendants are citizens of Delaware, Illinois, Maryland, and Nevada. *Id.* ¶¶ 3–13.

To state a claim for negligence, a complaint must include facts that plausibly allege (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. *See Marshall v. Burger King Corp.*, 222 Ill.2d 422, 430 (2006). The presence of a duty is a question of law, while breach and proximate cause are questions of fact for the jury. *Id*.

Whether the defendants owed a duty of care to Burgarino depends on whether they "stood in such a relationship to one another that the law impose[d] upon [Harrah's] an obligation of reasonable conduct for the benefit of [Burgarino]." *Krywin v. Chicago Transit Auth.*, 238 Ill.2d 215, 226 (2010). Four policy considerations guide the inquiry: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 18. Under this traditional framework, the general rule in Illinois is that one has no affirmative duty to protect others from third-party criminal attacks. *See Hills v. Bridgeview Little League Ass'n*, 195 Ill.2d 210, 228 (2000); *Witcher v. 1104 Madison St. Rest.*, 2019 IL App (1st) 181641, ¶ 12.

But there are exceptions. Namely, the "universally accepted rule, articulated in section 314 of the Restatement (Second) of Torts" that a "special relationship" between the parties may give rise to a "duty to act affirmatively to protect another from criminal attack by a third person." *Iseberg v. Gross*, 227 Ill.2d 78, 87 (2007). The Illinois Supreme Court recognizes four special relationships "that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical

6

harm: common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation." *See Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 33; *see also Marshall*, 222 Ill.2d at 438. The rationale being that, in these relationships, "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other." *Hills*, 195 Ill.2d at 244 (quoting *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477, 483 (D.C. Cir. 1970)). As such, "a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated." *Id.*

Burgarino was Harrah's guest, and therefore, Harrah's owed a duty "to take reasonable action to protect [Burgarino] against unreasonable risk of physical harm." Restatement (Second) of Torts § 314A(1)–(2) (1965). That duty extended to risks arising from "the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." *Id.* § 314A, Comment d. At the same time, "[b]efore a duty to protect will be imposed it must also be shown that the criminal attack was reasonably foreseeable." *Hills*, 195 Ill.2d at 243. Put another way, liability will not attach if Harrah's neither knew nor should have known of the risk, because there is no requirement "to take precautions against a sudden attack from a third person which [Harrah's had] no reason to anticipate." Restatement (Second) of Torts § 314A, Comment e.

Harrah's contends that it had no duty to protect Burgarino from Watson's attack because the assault was not reasonably foreseeable. Harrah's relies primarily on *Witcher v. 1104 Madison St. Restaurant*, 2019 IL App (1st) 181641, which held that a restaurant had no duty to protect a customer from an unforeseeable third-party stabbing. *See id*. at ¶ 14. Harrah's argues that there is no duty to protect against criminal acts of third parties, unless "that specific criminal act is reasonably foreseeable." [22] at 1–2 (citing *Sameer v. Butt*, 343 Ill.App.3d 78, 86 (1st Dist. 2003)). To be reasonably foreseeable, says Harrah's, generalized allegations of prior crimes will not suffice and the criminal act at issue "must have resulted from the same risk as … prior incidents of criminal activity." *Witcher*, 2019 IL App (1st) 181641, ¶¶ 15–16 (quoting *Ignarski v. Norbut*, 271 Ill.App.3d 522, 527 (1st Dist. 1995)); [40] at 3.

The Illinois Supreme Court has rejected a narrow articulation of the relevant risk. In *Marshall*, the court held that a restaurant owed an affirmative duty to protect patrons from a negligent third-party driver who had crashed her vehicle through the restaurant's wall and killed a patron. *See Marshall*, 222 Ill.2d at 425, 450.[3] The court assessed the reasonable foreseeability of the crash at a higher level of abstraction than Harrah's advances here. "[I]t is reasonably foreseeable," the court wrote, "given

---

[3] While *Marshall* involved section 344 of the Restatement, the duty analysis under sections 314A and 344 are the same. *See Marshall*, 222 Ill.2d at 438 ("[S]ection 344 represents a specific statement of the general rule articulated in section 314A of the Restatement, and long recognized by this court, that certain special relationships may give rise to an affirmative duty to aid or protect another against unreasonable risk of physical harm.").

the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents." *Id.* at 442. Reasonable foreseeability depends on the "general character of the event or harm [and] not its precise nature or manner of occurrence." *Marshall*, 222 Ill.2d at 442 (citation omitted). A plaintiff need not show that "the exact method by which the injury occurred could have been expected[;]" rather, "[i]t is sufficient if some resulting injury could have been reasonably foreseen." *Id.* (quoting *Blue v. St. Clair Country Club*, 7 Ill.2d 359, 364 (1955)). The court warned against framing duty in "highly particular terms" or "fact-specific formulation[s]," because that would risk conflating the legal question of duty with the factual question of breach. *Marshall*, 222 Ill.2d at 443–44. Likewise, the court expressly rejected the contention that foreseeability requires a defendant have "notice of a prior, similar incident." *See id.* at 444–46.

It is reasonably foreseeable that hotel guests will occasionally be at risk of third-party assaults in hotels. *See Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380, ¶ 23; *see also Mrzlak v. Ettinger*, 25 Ill.App.3d 706, 712 (1st Dist. 1975) ("[W]here an assault upon a guest by a third party is involved, [ ] the hotel is held to a high degree of care."); *Danile v. Oak Park Arms Hotel, Inc.*, 55 Ill.App.2d 2, 8 (1st Dist. 1964) ("[I]f the guest is assaulted by an employee of the hotel or by a third person, the hotel may be held to a high degree of care."); *Fortney v. Hotel Rancroft*, 5 Ill.App.2d 327, 335 (1st Dist. 1955) ("A guest, who is either asleep in his room or about to enter his room, should not be subjected to the risk of an assault by a stranger. A guest has a right to rely upon the innkeeper doing all within his power to avoid or

prevent such an assault, and to that end should be required to exercise a high degree of care.").

And the complaint plausibly alleges that this attack was reasonably foreseeable. Watson suspiciously lurked and stalked patrons on Harrah's property for hours—in plain view of hotel staff—without checking in, gambling, or buying anything. [19] ¶¶ 23, 45. Harrah's cameras repeatedly recorded him doing so, and Harrah's did nothing to investigate his presence or prevent the attack on Burgarino. *Id*. Although not required to do so to show foreseeability, the complaint also alleges that another hotel guest was held at knife point in an attempted robbery at the hotel a year earlier. *Id*. ¶ 41. Because of their special relationship, Harrah's had a duty to take reasonable steps to protect Burgarino from third-party assaults, and the one alleged in the complaint fell within the zone of foreseeability. *See* Restatement (Second) of Torts § 314A(1)–(2).

Harrah's takes issue with several facts in the complaint. Defendants contend that complaint assumes that all Harrah's surveillance cameras were being monitored in real time, but it pleads no facts to support that assumption. [22] at 2–3. Harrah's further argues that the complaint does not plead facts that Watson's "suspicious behavior" included any gesture or threat of violence to any patron or that defendants knew of Watson's criminal history, or that Watson was the perpetrator of the previous year's attempted robbery. *Id*. at 3. But the gaps Harrah's identifies do not undermine the sufficiency of the complaint. Plaintiffs were not required to plead every detail or assumption to plausibly allege a duty of care. *See Kaminski v. Elite Staffing, Inc.*, 23

F.4th 774, 776 (7th Cir. 2022) (plaintiffs "need not plead detailed factual allegations to survive a motion to dismiss" (citation omitted)). As discussed, what plaintiffs have pleaded plausibly alleges a special relationship and a type of third-party assault that was reasonably foreseeable. That's all they needed to do at this stage. While relevant to issues of breach and causation, plaintiffs need not plead specific facts of Watson's behavior—or what defendants knew and when—to state a claim.

The existence of a duty of reasonable care says nothing about whether Harrah's breached its duty, or whether any breach proximately caused of Burgarino's injuries. *See Marshall*, 222 Ill.2d at 443–44. The complaint alleges that Harrah's failed to investigate Burgarino's presence or employ reasonable security measures, which proximately caused the assault on Burgarino. [19] ¶¶ 23, 41–42, 49. Those allegations are enough to put Harrah's on notice of a plausible claim. Whether Dixon can prove breach or causation are questions that require factual development. *Marshall*, 222 Ill.2d at 443–44. That is, Harrah's may prove that in fact, it took reasonable steps to prevent the attack in light of what it knew or didn't know, or that any breach of duty did not proximately cause the attack. But those issues cannot be resolved at this stage. *Krywin*, 238 Ill.2d at 226 ("Questions regarding a breach of a duty and proximate cause of the injury are reserved for the trier of fact.")."[M]erely concluding that the duty applies does not constitute an automatic, broad-based declaration of negligence liability." *Marshall*, 222 Ill.2d at 443. Count I states a claim, but no more.

### B.     Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was at least a high probability that such conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *See Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 50.

The standard is high: liability attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at ¶ 51 (quoting Restatement (Second) of Torts § 46, Comment d). The tort does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. Instead, a "defendant's conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!" *Lewis v. School Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (applying Illinois law) (citation and quotation marks omitted). To determine whether conduct is objectively extreme and outrageous, Illinois courts generally focus on three non-exclusive factors: (1) the degree of power or authority defendant holds over plaintiff; (2) whether the defendant knew the plaintiff was particularly susceptible to emotional distress and still acted inappropriately; and (3) whether the defendant reasonably believed that his objective

was legitimate. *See Cairel v. Alderden*, 821 F.3d 823, 835–36 (7th Cir. 2016) (citations omitted).

Dixon's allegations do not plausibly suggest that Harrah's or its employees abused a position of power, knew Dixon was prone to emotional distress and still acted inappropriately, or lacked a reasonable belief that they had legitimate objectives. To recap: (1) Harrah's employees did not inform Dixon about Burgarino's assault and stopped her from proceeding to the fifth floor without first verifying who she was; (2) Harrah's employees asked Dixon to pay her room bill, did not offer her sympathy, and did not escort her all the way to her car; and (3) Harrah's kept sending personalized ads to her for months. None of these actions were extreme or exceeded the bounds of decency. The complaint alleges insensitivity at most; it does not allege the kind of outrageous or atrocious conduct necessary to state a claim for intentional infliction of emotional distress. Limiting access to a crime scene was a legitimate objective, and the failure to reach out to Dixon immediately or give her support was not abusive. Nothing about the allegations suggests that the hotel was trying to insult Dixon or inflict emotional harm upon her. Dixon amended her complaint once in response to a motion to dismiss, *see* [9], [19], [20], and it is clear that any further amendment would be futile. Count II is dismissed with prejudice.

## IV. Conclusion

Defendant's motion to dismiss, [22], is granted in part, denied in part. Count II is dismissed with prejudice. The stay on discovery is lifted. Defendants shall answer

the complaint by March 23, 2022. The parties shall submit a status report with a proposed schedule for discovery by March 30, 2022.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  March 2, 2022